IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re JOSEPH CUNNINGHAM and RESA CUNNINGHAM,<br><br><br>Debtors. | Chapter 7<br><br>Case No. 10-BK-41037-SSC<br><br>Adv. No. 11-ap-00629-SSC<br><br>(Not for Publication- Electronic Docketing ONLY) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH CUNNINGHAM and RESA CUNNINGHAM,<br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br><br>MEMORANDUM DECISION |

I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion to Dismiss Count II of Plaintiff's First Amended Complaint" filed on June 29, 2012, and the Response and Reply filed thereto. After hearing an oral argument on Defendants' Motion for Summary Judgment on May 16, 2012, the Court issued an Order granting the Defendants' Motion for Partial Summary

1

Judgment as to Plaintiff's claim of non-dischargeability pursuant to 11 U.S.C. § 523(a)(4) and any claims brought based upon equitable subordination to the rights of Don Pickney and/or Olene Pickney. The Court denied the Defendants' Motion for Partial Summary Judgment as to Plaintiff's §§ 523(a)(2) and 523(a)(6) claims, but ordered the Plaintiff to file an amended complaint to show specifically the elements of fraud upon which the § 523(a)(2) claim was based. The Plaintiff filed a First Amended Complaint per the Court's May 31, 2012 Order. On October 4, 2012, the Court held oral argument on the current Motion and took the matter under advisement.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2012).

## II. FACTUAL BACKGROUND

In July 2001, Joseph and Resa Cunningham, the Debtors executed, a deed of trust ("Greenpoint DOT") in favor of Greenpoint Mortgage ("Greenpoint") securing a promissory note ("Note") in the amount of $315,000 and encumbering real property located at 29731 North 67th Way, Scottsdale, AZ 85262 owned by Debtors ("the Property"). Around December 2001, Debtors sold the Property to Don Pickney Ministries, with the latter executing a deed of trust ("Pickney DOT") securing a promissory note ("Pickney Note") in the amount of $325,000. This sale was financed as a "carry back purchase" with Don Pickney Ministries making the mortgage

2

payments to the Debtors.[1] The Greenpoint Note and Deed of Trust were not paid off. Instead, Debtors used the payments from Don Pickney Ministries to pay Greenpoint–a "wraparound."[2] Around August 2003, Don Pickney Ministries conveyed the Property to Don and Olene Pickney ("Pickneys"). The Pickneys refinanced the Property with Genysis Financial around September 2003, executing a Deed of Trust ("Genysis DOT") securring a promissory note ("Genysis Note") in the amount of $350,000. The Debtors were paid $315,200 from escrow, the Pickney Note was paid in full, and the Pickney DOT was released.

The Plaintiff alleges that the Debtors were required by agreement, equity and as a matter of law to pay off the Greenpoint Note and DOT and were entrusted with the escrow funds to satisfy the Greenpoint Note and DOT. The Debtors did not satisfy the Greenpoint Note and Deed of Trust; they retained the funds and continued to make payments. The Pickneys later refinanced multiple times, ultimately with Bear Stearns Residential Mortgage Corp. ("Bear Stearns"), with First American Title ("First American") providing the title insurance. The Debtors and the Pickneys both defaulted on their obligations. After the defaults by said parties, Bear Stearns discovered that Greenpoint still had a first position DOT. First American paid Greenpoint $319,949.17 to stop Greenpoint's trustee's sale under Arizona law and for a release of its lien.

---

[1] In a carry-back financing, a seller as well as conventional lender, provide financing to a purchaser. In "wraparound financing," the seller is providing financing which "wraps around" the original promissory note obtained by the seller. Thus, the purchaser makes one payment to the seller, who retains a portion of the funds to pay his new "wrap financing," and the seller pays the balance of the funds to his original lender. In essence, the seller's new financing wraps around the financing the seller previously obtained. This allows a purchaser who would normally not qualify for conventional financing to acquire real property. As a result, the conventional lender may not always be aware of the sale of the real property by the seller.
[2] See Note 1.

## III. DISCUSSION

### A. Motion to Dismiss Standard

Under FRCP 12(b)(6), "[a] complaint should not be dismissed under the rule `unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief'. . . . All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." In re Fresher, 846 F.2d 45, 46 (9th Cir. 1988).

Moreover, "it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. . . . All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party". Western Reserve Oil & Gas v. New, 765 F.2d 1428, 1430 (9th Cir. 1985).

Under Federal Rule of Civil Procedure 8(a)(2), incorporated in bankruptcy proceedings by Fed. R. Bankr. P. 7008, a complaint must state a "short and plain statement of the claim showing that the pleader is entitled to relief." However, a decision from the United States Supreme Court has stated a more nuanced approach. "[D]etailed factual allegations" are not required, but the Supreme Court has stated that Rule 8 does require "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

The Twombly decision focused on a Fed. R. Civ. P. 12(b)(6) Motion to dismiss. The plaintiffs had sued local telephone exchange carriers for antitrust conspiracy under the Sherman Act. The plaintiffs alleged that defendants did not compete with one another and engaged in parallel conduct which was unfavorable to competition. The plaintiffs did not independently allege an actual agreement among defendants. Id. at 1970. The Supreme Court found that while parallel business behavior would be admissible circumstantial evidence from

4

which a fact finder could infer an agreement, such behavior could not conclusively establish an agreement and could not in itself constitute a Sherman Act violation. Id. at 1964. The Supreme Court concluded that plaintiffs' allegation of parallel conduct, without more, was equally consistent with unilateral competitive business strategy and, if even taken as true, did not contain enough factual matter to suggest a plausible claim of conspiracy. Id. at 1971-73.  The Supreme Court rejected the oft-repeated language in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that a court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In the Twombly decision, the Supreme Court stated that it was not requiring a heightened fact pleading of specifics, but only enough facts to state a claim to relief which was plausible on its face. The Twombly decision makes it clear that a well-plead complaint may proceed even if the judge believes that the proof of facts is improbable and the possibility of recovery is very remote and unlikely, so long as the complaint states sufficient facts on its face that a claim for relief is plausible on its face.

In the decision of Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court clarified that the Twombly standard applied to pleadings in civil actions generally, rejecting the idea that the holding was limited to antitrust cases. In Iqbal, the Supreme Court stated that a complaint must be dismissed if it does not contain any factual allegation sufficient to suggest plausibly a defendant's discriminatory state of mind in an intentional discrimination suit. The Supreme Court found the allegations in the complaint insufficient to state a discrimination claim under Twombly's 'plausible' standard.  The Court also held that Fed. R. Civ. P.  9(b)--which requires particularity when pleading "fraud or mistake" but allows "other conditions of a person's mind [to] be alleged generally"--does not require the courts to credit a

5

complaint's conclusory statements without reference to its factual context. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade Rule 8's less rigid, though still operative, strictures.

For a complaint to survive a motion to dismiss, the nonconclusory "factual content" and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962 (9th Cir. 2009). Moss recognized that the Iqbal decision laid out a methodological approach for assessing the adequacy of a plaintiff's complaint:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) citing Iqbal. at 1950. Although dismissal may be appropriate, "plaintiff should be given an opportunity to amend `where justice requires, there is no evidence of bad faith, and the opposing party would not be unduly prejudiced.'" In re Jenkin, 83 B.R. 733, 734 (9th Cir. BAP 1988); Moss v. U.S. Secret Service, 572 F.3d 962 (9th Cir. 2009).

Using Twombly, Iqbal, and Moss as guides, the Court will now consider Defendants' Motion to Dismiss.

### B. § 523(a)(2) Non-Dischargeability Claims

Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud." In the Ninth Circuit, to prove actual fraud in order to except a claim from discharge, a creditor must establish each of the

following elements: (1) The debtor made the subject representations, or omitted to state material facts, equating to a misrepresentation(s); (2) At the time the subject representations or omissions were made, the debtor knew the representations were false, or knew that the omissions created a materially false statement(s), and the debtor was under a duty to disclose the omitted statement(s); (3) The debtor made the subject representations or omissions with the intention of deceiving the creditor; (4) The creditor justifiably relied upon the debtor's representations or omissions to state material facts; and (5) The creditor suffered the alleged damages as the proximate result of the subject representations or omissions having been made. In re Harmon, 250 F.3d 1240, 1246 n. 4 (9th Cir. 2001); In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996) citing In re Britton, 950 F.2d 602, 604 (9th Cir. 1991); In re Rosendahl, 307 B.R. 199 (Bankr.D.Or. 2004). The Plaintiff must establish the nondischargeability of a debt by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657–58, 112 L.Ed.2d 755 (1991).

The Plaintiff contends that the Debtors committed fraud by concealing two material facts. First, it is alleged that the Debtors concealed from Greenpoint the transfer of the Property to Pickneys. Second, it is alleged that the Debtors failed to disclose and concealed the Pickneys' refinancing and the Debtors' subsequent receipt of $315,250. The Plaintiff argues that a concealment of material facts is no different than a misrepresentation. Each of these allegations will be analyzed in turn.

In the Response, the Plaintiff cites to the decision of In re Barrack, 217 B.R. 598 (9th Cir. BAP 1998) for the proposition that a "promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." "Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." Id. at 607. "Therefore, in determining whether the debtor had no intention to perform, a court may

7

Case 2:11-ap-00629-PS   Doc 44   Filed 12/05/12   Entered 12/05/12 15:40:03   Desc
Main Document    Page 7 of 15

look to all the surrounding facts and circumstances." Id.  Although the Plaintiff's citations are accurate, they are inapposite. In Barrack, the debtor was accused of making the fraudulent misrepresentations to induce the execution of the loan.  In this case, the Plaintiff's two allegations relate to Debtors' alleged concealment of material facts, rather than actual representations. The Court must look to other case law, as described below, in considering all surrounding facts and circumstances in determining fraudulent intent.

### 1. Sale of Property to the Pickneys

The Plaintiff argues that the sale of the Property constitutes a fraudulent misrepresentation, relying on the following:

1. The Debtors sold the Property to the Pickneys within 5 months of execution of the Greenpoint DOT, an omission of a material fact as to Greenpoint due to the acceleration clause.

2. The Debtors knew that concealing the sale to the Pickneys was deceptive because the Greenpoint DOT and Note required them to notify Greenpoint if they sold the Property.

3. The sale to the Pickneys proceeded without involvement of an escrow company, because the Debtors intended to conceal the transfer from Greenpoint.

4. The Debtors intended to deceive Greenpoint by their above-described actions and concealments.

5. The Debtors continued to make payments to Greenpoint from 2001 to 2008 (though often delinquent) thereby continuing the knowing and intentional concealment from Greenpoint of the sale.

6. This concealment allowed the Debtors to extend the term of the Greenpoint Note and DOT.

7. Greenpoint justifiably relied on the Debtors to notify them of the sale.

8. The Debtors continued to make payments on the Greenpoint Note and did not notify Greenpoint of the sale.

9. The Plaintiff does not address how the omissions were the proximate cause of the loss suffered by Greenpoint.

10. Because the Plaintiff paid Greenpoint in full, it is entitled to be subrogated to the rights of Greenpoint.

8

The Court first considers the relevant Ninth Circuit authority of In re Apte, 96 F.3d 1319 (9th Cir. 1996). In that case, a lessee assigned its interest in the lease to a sublessee in contravention of the lease with the landlord. The lessee failed to gain permission from the landlord for the sublease but proceeded with the sublease anyway. The sublessee made substantial improvements to the property based on lessee's representations that he had obtained permission for the sublease from the landlord. The landlord eventually proceeded with an unlawful detainer action against the lessee and sublessee. The lessee filed for bankruptcy, and the sublessee brought an action to determine that certain obligations owed to subleseee were non-dischargeable. In finding the debt ultimately nondischargeable, the Court looked to the common law in determining the duty to disclose in the context of § 523(a)(2) fraud, and found that "a party to a business transaction has a duty to disclose when the other party is ignorant of material facts which he does not have an opportunity to discover." Id. at 1324.

In this case, the Plaintiff has advanced plausible facts that could allow the Court to find that the Debtors had a duty to disclose the material fact that they sold the property in contravention to the Greenpoint DOT. Greenpoint had no opportunity to discover this sale as it would be unreasonable to expect Greenpoint to constantly check the county records for each of its outstanding deeds of trust, including the Greenpoint DOT on the Property in question. See In re Demarest, 176 B.R. 917, 922 (9th Cir. 1995) ("the fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery, and it is well established that he is not held to constructive notice of a public record which would reveal the true facts.") (citing In re Kirsh, 973 F.2d 1454 (9th Cir. 1992).

In the decision of Field v. Mans, 157 F.3d 35 (1st Cir. 1998), on remand after the Supreme Court decided the standard of reliance in fraud cases, the First Circuit addressed a very

9

similar circumstance that may be used as persuasive authority. In that case, the debtors executed a second deed of trust in favor of a creditor in which the debtor agreed not to transfer the property without the prior written consent from the creditor. About three and a half months later, the debtor transferred the property without the creditor's knowledge or consent. The debtor asked for permission only after the sale, at which time the creditor demanded $10,000 to approve the sale. The debtor refused to make the payment, did not disclose that the sale had already taken place, and continued to make payments to the creditor. Real estate prices subsequently went down, and the debtor filed for bankruptcy. Eventually, the first mortgagee foreclosed, leaving nothing for the creditor holding the second mortgage.

The First Circuit, overturning the First Circuit Bankruptcy Appellate Panel, held that the debt owed to the creditor was non-dischargeable pursuant to § 523(a)(2). It reasoned that "while no one suggeste[d] that this original granting of credit to the [debtor] was fraudulently induced, "the debtor had obtained an "extension of credit" under § 523(a)(2). Field v. Mans, at 39-40, 43. The First Circuit analyzed the "ordinary meaning" of the term "extension," because the Bankruptcy Code did not provide a definition. It found two definitions. First, an extension can refer to an offer "to make available" something.  Under that definition, the only extension of credit came at the time of the original loan from creditor to debtor. Second, an extension may also mean an "increase in length of time" or "an agreement on or concession of additional time (as for meeting an overdue debt or fulfilling a legal formality)." Under this second definition, the First Circuit found that the debtor had triggered the acceleration clause in the deed of trust and note. Thus, the debtor obtained an extension of credit because the creditor holding the second mortgage had the right to call the note due or demand payment from the debtor every day after the unauthorized sale.

10

As to causation, the court held that there did not have to be "virtual certainty that acceleration would have taken place," but that it was enough that the creditor was in a position to have accelerated [the note and mortgage] and might well have done so. Id. at 44. The Ninth Circuit has adopted a similar view of causation. In In re Kim, 163 B.R. 157, 161 (9th Cir. BAP 1994), the Ninth Circuit Bankruptcy Appellate Panel stated: "The Ninth Circuit ruled that to show proximate damages a creditor must show that it had valuable collection remedies at the time and that those remedies lost value during the renewal period. The Ninth Circuit disagreed with the bankruptcy court's imposed requirement that the creditor also show that it would have exercised those rights in a sufficiently timely fashion so as to be able to collect." See also In re Bell, 2010 WL 4809123 (Bankr. W.D. Wash. 2010).

Admittedly, this case is distinct in some ways from the Fields v. Mans case. For instance, in Fields v. Mans, the debtor asked for permission following the sale, which indicates that the debtor knew that the sale would not be allowed and yet continued to conceal the fact that the sale had already taken place for some time. In this case, the Debtors never asked for permission from Greenpoint to proceed with the sale. While failing to ask for permission may be seen as an attempt to conceal the sale, it also calls into question whether the Debtors knew that the omission was a materially false statement and whether they had an intent to deceive. However, these issues relate to the sophistication of the Debtors and their credibility, matters best left to a trial on the merits. Furthermore, the opinion in Fields is merely persuasive authority. However, this Court finds the authority sufficiently on point as to warrant not dismissing the Plaintiff's complaint.

While this indicates that there are factual and legal issues that still need to be resolved, the similarity of the particular facts alleged by the Plaintiff to those in the Fields v.

11

Mans case indicates that the Plaintiff may be able to prove some set of facts that would entitle the Plaintiff to relief pursuant to § 523(a)(2). The Plaintiff's First Amended Complaint states sufficient facts to make its claim plausible. Additionally, the Plaintiff has alleged facts with particularity pursuant to Fed. R.Civ. P. 9(b).

## 2. Debtors' Failure to Disclose the Windfall from the Pickneys' Refinance

The Plaintiff has an alternative basis to proceed under § 523(a)(2). The Plaintiff makes the following argument that Debtors' failure to disclose the Pickney refinance and their subsequent receipt of money from the Pickneys allowing the Debtors to be paid on the Pickney's Note and DOT, constitutes a fraudulent representation:

1. The Debtors received a First Amended Title Commitment regarding the Pickney refinancing on the Property that failed to disclose the Greenpoint DOT. A Second Amended Title Commitment was issued in early September 2003 that reflected the Greenpoint DOT and included a requirement that it be paid off. The third-party escrow company failed to make that a requirement of closing escrow.

2. The Debtors failed to disclose the Pickney Note and DOT to Greenpoint or that they were going to receive Escrow Funds.

3. The Debtors knew they were receiving the Escrow Funds as a result of a mistake.

4. Instead of using the Escrow Funds to satisfy the Greenpoint Note and DOT, the Debtors used the Funds to make enough payments to Greenpoint to avoid acceleration of the Greenpoint Note and Deed of Trust and obtain a further extension of their Greepoint loan.

5. The Debtors knew that the refinancing transaction and the receipt of the funds were material facts that they should have been disclosed to Greenpoint.

6. The Debtors knew that concealing the receipt of Escrow Funds was deceptive and fraudulent.

7. The Debtors have admitted that they knew they received the Escrow Funds by mistake.[3]

8. The Debtors intended to deceive Greenpoint.

9. Greenpoint justifiably relied on the Debtors' not concealing the refinancing transaction.

---

[3] Debtor Resa Cunningham's Deposition. Docket Entry No. 19 , Exhibit B, 38-39.

10. Greenpoint justifialbly relied on the Debtors' providing it with the Escrow Funds should a refinancing occur.

11. The Plaintiff, as subrogee of Greenpoint, was damaged by the Debtors' concealment of the receipt of the Escrow Funds, the pending Pickney refinance, and the sale to Pickneys in an amount to be proved at trial, up to the full sum of $313,949.17.

The Court finds instructive the case of In re Demarest, 176 B.R. 917 (Bankr. W.D. Wash. 1995) aff'd 124 F.3d 211 (9th Cir. 1997). In Demarest, the debtors owned a home encumbered by a deed of trust in favor of a lender. The debtors sold the property and disclosed the deed of trust in the purchase and sale agreement, in which they agreed to convey clear title to the property. The title company for the buyers, which provided title insurance, however, overlooked the deed of trust and the lender was not paid at closing. The debtors realized the mistake because they received $65,000 in excess of what they should have received under the sale documents. Nevertheless, the debtors deposited the check, failed to satisfy the encumbrance, and continued making monthly payments. The lender did not discover that the debtors had sold the property until almost two years later, when it commenced foreclosure proceedings. The title company for the buyers paid off the lender to stop the foreclosure proceedings and sued the debtors. The debtors filed for bankruptcy protection and the title company contested the dischargeability of the debt.

In that case, the district court upheld the bankruptcy court's decision that the plaintiff's claim was nondischargeable. The court reasoned that silence may create a false impression, providing the basis for a misrepresentation that is actionable under § 523(a)(2)(A). In re Howarter, 114 B.R. 682, 684-85 n. 2 (9th Cir. BAP 1990); Haddad v. Haddad (In re Haddad), 21 B.R. 421, 423-24 (9th Cir. BAP 1982), aff'd without opinion , 703 F.2d 575 (9th Cir. 1983). The debtors made a tacit representation to the title company that all encumbrances were being satisfied at closing. The court described the situation as "analogous to one in which a

13

debtor has obtained an extension of credit by false pretenses. The intent issue thus revolves around the procurement of funds, not the intent to repay or not to repay." In re Demarest, 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995) aff'd 124 F.3d 211 (9th Cir. 1997). The debtors knew of the mistake and knew that it would mean a loss for either their lender or for the buyer's title company, which was evidence of their intent to deceive. The court then embraced the Ninth Circuit's use of justifiable reliance–later adopted by the Supreme Court in Field v. Mans-and rejected the debtors' argument that there is a per se rule that title companies may never satisfy the reliance requirement of § 523(a)(2)(A). In re Demarest, 176 B.R. 917, 921-22 (Bankr. W.D. Wash. 1995) aff'd 124 F.3d 211 (9th Cir. 1997). The court also rejected the debtors' argument concerning the subrogation of the title company, because it found that the debtors perpetrated a direct fraud on the title company. Id. at 922.

There are some factual similarities in this case. For instance, the Plaintiff cites to Debtor Resa Cunningham's deposition to show that Ms. Cunningham called the title company handling the Pickney refinancing to clarify the mistake, and that the title company allegedly told her that the title company only needed a release of the Pickney DOT because the Property otherwise did not have a mortgage lien against it.[4] Similarly, Mr. Cunningham stated in his deposition that he spoke with Michelle Fondren from Genysis Financial and that she told him that the only lien on the Property was the one in the name of Resa and Joseph Cunningham.[5] This indicates that the Debtors knew of the mistake, yet failed to correct it. The Debtors also continued to make the monthly payments on the Greenpoint Note, potentially obfuscating their fraudulent conduct.

---

[4] Debtor Resa Cunningham's Deposition. Docket Entry No. 19 , Exhibit B, 38-39.
[5] Debtor Joseph Cunningham's Deposition. Docket Entry No. 19 , Exhibit A, 8.

14

Therefore, there is a legal basis for the Plaintiff's First Amended Complaint. The Debtors may be able to distinguish their case factually, but Plaintiff has met its burden to state a claim upon which relief may be granted.

IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Plaintiff has satisfied its duty under Fed. Rs. Civ. P. 12(b)(6) and 9(b), incorporated into this Adversary Proceeding as a result of Bankruptcy Rules 7012 and 9, to state a claim upon which relief may be granted and has stated with particularity the allegations surrounding the alleged fraud. The Court has cited to relevant case law that provides a basis for the particular facts alleged to be considered fraud, though still recognizing that certain cases cited by this Court are not binding, but merely provide persuasive authority. Because Plaintiff has met its burden under Fed, Rs, Civ. P. 12(b)(6) and 9(b), the Court denies the Defendants' Motion to Dismiss.

DATED this 5th day of December, 2012

*Sarah Sharer Curley*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge